E. STEWART JONES HACKER MURPHY, LLP
James Knox, Bar No. 517109
28 Second Street
TROY, NY 12180-3986
Tel. (518) 274-5820

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VEBRA MOORE,<br><br>        Plaintiff<br><br>        V.<br><br>POLICE OFFICER RYAN THORNE,<br>POLICE OFFICER MATTHEW THORNE,<br>LIEUTENANT MARK McCRACKEN,<br>JANE DOE, AND JOHN DOES 1 AND 2.<br><br>        Defendants | Case No. 1:18-CV-0971 (FJS/DJS)<br><br>**42 U.S.C. § 1983 COMPLAINT FOR DAMAGES**<br><br>**FALSE ARREST AND ILLEGAL IMPRISONMENT**<br><br>**USE OF EXCESSIVE FORCE**<br><br>**DEMAND FOR JURY TRIAL** |

1

COMES NOW Plaintiff VEBRA MOORE by and through her attorneys, the E. STEWART JONES HACKER MURPHY law firm, and complaining of Defendants police officers Matthew Thorne and Ryan Thorne, Lieutenant Mark McCracken, Jane Doe, and John Does 1 and 2.

1. This is an action for money damages brought pursuant to 42 USC §§1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon 28 USC §§ 1331 and 1343.

2. The Defendants used excessive force against Plaintiff in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

3. At all times material hereto, Defendants were duly appointed and acting officers of the police department of the City of Schenectady, acting under color of the statutes, ordinances, regulations, policies, customs and usages, of the City of Schenectady.

**FACTS**

4. On the evening of October 16, 2015, Plaintiff, a 102-pound, 5-foot, 5-inches tall black woman, was in the vicinity of 939 Crane Street in the City of Schenectady.

5. Defendants Ryan Thorne and Matthew Thorne are brothers who were, at all times relevant, employed by the City of Schenectady Police Department as Police Officers and were acting in their capacity as such.

6. Defendants John Doe No. 1, John Doe No. 2, Jane Doe and Mark McCracken were, at all times relevant, employed by the City of Schenectady Police Department as Police Officers and were acting in their capacity as such.

7. Beginning at midnight on October 17, 2015, Defendants Ryan Thorne and Matthew Thorne were partnered together in a single patrol car for a patrol shift in the City of Schenectady in their capacity as police officers for the City of Schenectady.

8. Sometime in the early morning hours of October 17, 2015, in the vicinity of 939 Crane Street, a stabbing occurred, and police were called.

9. Defendants were two among many officers who responded to the area surrounding the 900 block of Crane Street.

10. Police set up a crime scene that encompassed the area in front of 939 Crane Street,

in which Plaintiff and many other individuals were standing.

11. Upon information and belief, at the time the stabbing occurred, Plaintiff was in the El Dorado Bar, located at 939 Crane Street.

12. Patrons of the El Dorado Bar were asked to exit the bar. In the flood to the exit, Plaintiff lost her car keys, which she did not discover until she had exited the bar.

13. Police blocked patrons from reentering the El Dorado Bar after patrons had exited.

14. Plaintiff's car was legally parked in a parking lot across the street from the El Dorado Bar, but her home was many blocks distant.

15. Upon exiting the bar, Plaintiff discovered that her keys were missing, and as she could not reenter the bar, Plaintiff spoke at length with several officers about how she was unable to get home.

16. At approximately 2:11:54 a.m. on October 17, 2015, police erected crime scene tape blocking off the entrance to the 900 block of Crane Street at the intersection of Crane Street and Fourth Avenue.

17. The other end of the 900 block of Crane Street is bounded by Main Street. At some point crime scene tape was placed across Crane Street at Main Street, but it is unknown what time that occurred.

18. Shortly after 2:00 a.m. on October 17, 2015, Plaintiff observed an acquaintance of hers, Nikia Mosely, whom she knew to be severely hearing impaired, detained in the back of the police car of Defendants Ryan Thorne and Matthew Thorne.

19. Concerned that Mr. Mosely was being detained erroneously and due to the fact that he was unable to hear or understand police officers, Ms. Moore began asking officers around her, including Police Officer Willetts, about Mr. Mosely's detention and advising them that Mr. Mosely was deaf.

20. At approximately 2:14:03 a.m., Mr. Mosely was released from Defendants' patrol car.

21. While Ms. Moore was attempting to explain to Officer Willets that Mr. Mosely was deaf, Defendant Ryan Thorne, with whom Ms. Moore had had not previous interaction,

3

approached at approximately 2:14 a.m.

22. Defendant Ryan Thorne ordered Ms. Moore to leave the area and advised that if she did not she would be placed under arrest.

23. Ms. Moore attempted to explain to Defendant Ryan Thorne that she could not find her keys, that her car was located nearby but that she had no way to get home.

24. At 2:15 a.m., after less than 90 seconds of verbal interaction with Plaintiff, Defendant Ryan Thorne grabbed Plaintiff's arm and threw her chest first onto the hood of a police patrol car.

25. Defendant Ryan Thorne placed handcuffs on Plaintiff, but they were very loose, due to the very small diameter of her wrists.

26. Plaintiff's left hand slipped out and she turned to Defendant Ryan Thorne, gestured that her hand had slipped out, and said, "Look."

27. Immediately thereafter Defendant Ryan Thorne pinned Plaintiff's arms behind her back.

28. Plaintiff began repeatedly informing Defendants that they were hurting her.

29. Nevertheless, and using his body for force, Defendant Ryan Thorne bodily slammed Plaintiff to the surface of the roadway, partially landing on her back.

30. Plaintiff landed on her knees and stomach and was unable to break her fall with her hands, which were held behind her back by Defendant Ryan Thorne, causing significant pain and injury to Plaintiff's knees.

31. Plaintiff began vociferously notifying Defendants that her knee had been injured in the body slam.

32. Defendants ignored Plaintiff's complaints of injury.

33. Aided by his brother, Defendant Matthew Thorne, Defendant Ryan Thorne picked Plaintiff up by her arms and moved toward Defendants' patrol car.

34. Defendant Ryan Thorne used one hand to open the backseat door of the Patrol Car and, together, Defendants bodily threw Plaintiff into the backseat of the car, causing her to strike her knee on the metal edge of the patrol car doorway, causing significant pain and injury to

1  Plaintiff's knee.

2  35.  Defendants then drove Plaintiff to the Schenectady Police Station located at 531
3  Liberty Street in Schenectady, New York.

4  36.  During the drive Defendant Matthew Thorne whistled a Christmas carol.

5  37.  During the drive Defendant Ryan Thorne stated: "We're supposed to sit there and
6  take her shit because there are cameras there?"

7  38.  Upon arriving at the station, Defendants deviated from written department policy
8  and, instead of driving into the sally port and escorting Plaintiff into the station through areas
9  which are continuously and entirely monitored by surveillance cameras which record all
10 movement, Defendants elected to bring Plaintiff into the station through a back door.

11 39.  Plaintiff limped from the patrol car into the station, escorted by Defendants.

12 40.  Although the station cameras record the exterior area of the back door, that door –
13 unlike the sally port – enters into a lengthy hallway that is not covered by any camera.

14 41.  Defendants Ryan Thorne and Matthew Thorne brought Plaintiff through the
15 unsurveilled hallway and, midway down that hallway, deliberately caused Plaintiff to fall to the
16 tile floor, directly onto her knees, causing significant pain and injury to her knees.

17 42.  Upon entering the jail area, Plaintiff began screaming for assistance, insisting that
18 someone help her, and crying out that her knee was in significant pain.

19 43.  Defendants John Doe 1, John Doe 2, Jane Doe and Lieutenant Mark McCracken
20 were present at the station.

21 44.  Defendant McCracken was present in his capacity as supervisor of all members
22 working at the station that night, including all other defendants herein.

23 45.  Plaintiff was, after the ordeal she had suffered up until that point, completely
24 unable to walk on her own.

25 46.  Defendant Ryan Thorne used the handcuffs which were binding Plaintiff's hands
26 behind her back as a handhold to bodily lift Plaintiff off the ground, causing extreme pain and
27 hyperextension of Plaintiff's shoulders, in order to drag her about and through the police station.

28 47.  Defendants Matthew Thorne, John Doe 1, John Doe 2 and Jane Doe stood by and

watched as Defendant Ryan Thorne used the handcuffs as a handhold to bodily lift Plaintiff off the ground and drag her through the station.

48. Defendants John Doe 1, John Doe 2 and Jane Doe were in close proximity to Defendant Ryan Thorne's use of excessive force upon Plaintiff and observed that use of force.

49. Defendants John Doe 1, John Doe 2 and Jane Doe took no action to intervene upon Defendant Ryan Thorne's improper use of force upon Plaintiff.

50. While dragging Plaintiff through the station toward a holding cage, Defendant Ryan Thorne twisted Plaintiff toward the doorway of the cage, punched Plaintiff in the face and slammed Plaintiff into the cage and the floor of the cage.

51. Defendant Ryan Thorne continued to repeatedly punch Plaintiff in the face and then began to strike Plaintiff bodily with his knee while she was cuffed and on the ground.

52. Defendant Matthew Thorne then picked Plaintiff up off the floor and slammed her head first into the concrete wall of the cage, causing significant pain and injury to Plaintiff's head and neck.

53. Plaintiff was rendered insensible by the assault.

54. Plaintiff has required medical attention following this treatment including wound care, knee surgery, and treatment for concussion and post-concussive syndrome.

55. At all times during the events described above, the Defendant police officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence, support and the authority of their office, to each other during the described events.

56. As a direct and proximate result of the acts of the Defendant officers, the Plaintiff suffered the following injuries and damages:

    a. Violation of her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of his person, and to not be subjected to excessive force;

    b. Physical damages, including medical expenses, pain and suffering and emotional trauma;

   c. Economic loss, including extra school costs incurred loss of income and other expenses.

57. The actions of the Defendant officers violated the clearly established and well settled Federal constitutional rights of Plaintiff, including freedom from the unreasonable seizure of her person and freedom from the use of excessive, unreasonable force against her person.

## COUNT ONE

## 42 U.S.C. §1983

### Use of Excessive Force
### (Defendants Matthew Thorne and Ryan Thorne)

58. Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 57 above.

59. During the act of Plaintiff's arrest, Defendants Matthew Thorne and Ryan Thorne, by the actions detailed above, including but not limited to throwing Plaintiff to the ground while handcuffed, striking Plaintiff in the knee, improperly using a pain-compliance technique to carry Plaintiff, beating Plaintiff about the face, body-slamming Plaintiff onto the jail floor and slamming Plaintiff headfirst into a concrete wall. In so doing, Defendants Matthew Thorne and Ryan Thorne used excessive force in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

60. As a direct and proximate result of the use of excessive force, Plaintiff was damaged by Defendants.

61. These damages include loss of her physical liberty; physical damages, including medical expenses; pain and suffering and emotional trauma as well as economic loss, including loss of income and other expenses.

## COUNT TWO

## 42 U.S.C. §1983

### Failure to Intervene
### (Defendants John Doe No. 1, John Doe No. 2, and Jane Doe)

62. Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 61

above.

63. Defendants John Doe No. 1, John Doe No. 2, and Jane Doe had a duty to intervene to prevent the use of excessive force by Defendants Ryan Thorne and Matthew Thorne that occurred at the Schenectady Police Station.

64. Defendants John Doe No. 1, John Doe No. 2, and Jane Doe had a reasonable opportunity to intervene to prevent the use of excessive force by Defendants Ryan Thorne and Matthew Thorne.

65. Defendants John Doe No. 1, John Doe No. 2, and Jane Doe failed to intervene.

## COUNT TWO

## 42 U.S.C. §1983

### Supervisory Liability
### (Defendant Mark McCracken)

66. Plaintiff re-alleges and incorporates by reference herein paragraphs 1 through 65 above.

67. Defendant Mark McCracken was at all times relevant the direct supervisor of Defendants Matthew Thorne and Ryan Thorne.

68. Defendant Mark McCracken was made aware of the violation of Plaintiff's constitutional rights by the use of excessive.

69. Defendant Mark McCracken was, upon information and belief, informed by police personnel that an incident was occurring.

70. Defendant Mark McCracken was directly aware and visualized the ongoing beating of Plaintiff by Defendants Matthew Thorne and Ryan Thorne, prior to Plaintiff having been rammed into the wall of the property cage, head first, by Defendant Matthew Thorne.

71. Defendant Mark McCracken failed to remedy the wrong that was ongoing and in fact encouraged the assault of Plaintiff by deliberately verbally communicating his indifference over her plight to Defendants Ryan Thorne and Matthew Thorne, during their assault of Plaintiff in the property cage.

72. Defendant Mark McCracken was aware of the violation of Plaintiff's rights by the

8

use of excessive force, had the opportunity to direct his officers to cease the violation, and failed to do so.

73. Wherefore, Plaintiff requests that this Court:

    a. Award costs of this action to the Plaintiff;

    b. Award compensatory damages to Plaintiff against the Defendant, jointly and severally;

    c. Award punitive damages against Defendants, as determined by the jury.

    d. Award reasonable attorney's fees and costs to the Plaintiff on all counts.

    e. Award such other and further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

74. Plaintiff demands a jury trial on all causes of action.

Dated: August 13, 2018

By:   s/James C. Knox
       James C. Knox
       E. STEWART JONES HACKER MURPHY, LLP
       28 Second Street
       Troy, New York   12180
       (518) 274-5820
       (518) 274-0556 (facsimile)
       E-Mail:  jknox@joneshacker.com